## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF RHODE ISLAND

In re:   Keven A. McKenna,                         BK No. 17-10314
         Debtor                                    Chapter 11

---

### DECISION ON MOTION TO DISMISS CASE AND ORDER TO SHOW CAUSE

William K. Harrington, in his capacity as the United States Trustee for Region One, by and through Assistant United States Trustee Gary Donahue ("UST"), moved to dismiss Debtor Keven A. McKenna's bankruptcy case under Bankruptcy Code § 1112(b)(1). Additionally, this Court issued an Order to Show Cause Why the Case Should Not Be Dismissed pursuant to § 1112(b)(1) and (b)(4)(E).[1] Throughout this proceeding, Mr. McKenna has appeared *pro se*, including at the evidentiary hearing held on October 26, 2017. After considering the testimony and evidence adduced at the hearing, the Court concludes that the case must be dismissed because multiple grounds of cause exist under § 1112(b)(4), Mr. McKenna has not shown reasonable justification excusing his conduct, and he has not cured his failure to comply with his obligations as a chapter 11 debtor in possession. Lastly, no unusual circumstances exist and dismissal of the case is in the best interest of the creditors and the estate.

### I.    Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(b), and Rule 109 of the Local Rules of the United States District Court for the District of Rhode Island. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "chapter," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub L. No. 109-8, 119 Stat. 37 ("BAPCPA"). References to the "Bankruptcy Rules" or "Rule" shall mean the Federal Rules of Bankruptcy Procedure.

## II.      Procedural Background

On March 1, 2017, Mr. McKenna filed a voluntary chapter 13 bankruptcy petition. On

August 1, 2017, the Court granted Mr. McKenna's request to convert the case to one under

chapter 11. On August 22, 2017, the Court issued an order requiring him to file his outstanding

chapter 11 statement of current income (Form 1122B, "Income Statement") and the list of the 20

largest unsecured creditors (Form 104, "Largest Creditors List") by September 6, 2017 ("August

22nd Order," Doc. #90). Mr. McKenna failed to file these documents by the deadline. The UST

convened the § 341 meeting of creditors ("Initial Meeting") on August 28, 2017. The UST did

not conclude the meeting, and instead continued it to September 11, 2017 ("Continued

Meeting"), for further testimony and document production. (Trial Ex. A, p.15).

On September 13, 2017, the UST filed his original motion to dismiss ("First Motion,"

Doc. #98) alleging as grounds warranting dismissal under § 1112(b)(1) and (b)(4), Mr.

McKenna's failure to appear at the Continued Meeting and his failure to provide repeatedly

requested documents. Two days later, Mr. McKenna filed his response to the First Motion

("Objection," Doc. #100), and a preliminary hearing was held on October 4, 2017. At the

hearing, the UST alleged additional facts demonstrating cause for dismissal under § 1112(b)(1)

and (b)(4). In light of these assertions and Mr. McKenna's failure to comply with the August

22nd Order, the Court determined that an evidentiary hearing was necessary. The Court entered a

pretrial order (Doc. #109) permitting the UST to amend his First Motion and scheduling the

evidentiary hearing for October 26, 2017. It also required the parties to file, by October 20, 2017,

pretrial statements with witness lists and exhibit lists, and to file and deliver to the Court three

sets of binders containing the witness lists and the pre-marked exhibits they sought to admit into

evidence. Additionally, the Court issued an Order to Show Cause Why the Case Should Not Be

Dismissed under § 1112(b)(1)(E) for Mr. McKenna's failure to comply with the August 22nd Order ("Show Cause Order," Doc. #110).

On October 11, 2017, the UST timely filed an Amended Motion to Dismiss the Case ("Amended Motion," Doc. #114) asserting additional facts and grounds of cause for dismissal under § 1112(b)(1) and (b)(4). The UST also timely filed a one-sided pretrial statement, averring that Mr. McKenna had failed to cooperate in the preparation of a joint pretrial statement, and delivered the required document binders to the Court (Doc. ## 117, 118). Mr. McKenna did not file a pretrial statement, a written response to the Show Cause Order, or his witness and exhibit lists, or deliver any binders to the Court. Although Mr. McKenna failed to file a response or an objection to the UST's Amended Motion, the Court deemed his Objection to the First Motion as applicable to the Amended Motion.

About a week before the evidentiary hearing, Mr. McKenna amended his petition to indicate that he was a small business debtor as defined by §101(51D). *See* Amended Petition, Doc. #116. During the hearing, the Court admitted the UST's trial exhibits into evidence. These included the case docket sheet, the petition and schedules, the statement of financial affairs (Trial Exs. A, B), and a copy of the UST's "Operating Guidelines and Reporting Requirements for Chapter 11 Cases, Region 1, Maine, Massachusetts, New Hampshire and Rhode Island" ("Operating Guidelines," Trial Ex. E). At the conclusion of the hearing, the Court took the matter under advisement. This Decision constitutes the Court's findings of fact and conclusions of law in accordance with Rule 7052.

### III.    Positions of the Parties

#### A.  UST's Amended Motion

The UST alleges three separate statutory grounds of "cause" for dismissal under

§ 1112(b)(4), including Mr. McKenna's failure to (i) attend the Continued Meeting, (ii) provide

information or attend meetings reasonably requested by the UST, and (iii) file a monthly

operating report for August of 2017. *See* 11 U.S.C. § 1112(b)(4)(G), (H), and (F). The UST also

maintained that Mr. McKenna's failure to appear at the Continued Meeting and timely provide

requested financial information impaired his ability to supervise Mr. McKenna's case, a

significant part of his duties required by 28 U.S.C. § 586(a)(3). Finally, the UST asserted that

Mr. McKenna failed to show reasonable justification excusing these alleged failures, thereby

requiring dismissal of the bankruptcy case. *See* 11 U.S.C. § 1112(b)(2).

#### B.  Mr. McKenna's Objection

Mr. McKenna responded, asserting that he had (i) provided the requested documents to

the UST, (ii) cooperated with the UST, (iii) met with the UST on three occasions, and (iv)

substantially complied with his obligations as a debtor and debtor in possession. Mr. McKenna

also maintained that the UST's Amended Motion was "premature" because "the [case] was only

converted to a Chapter 11 on August 1, 2017," and that "no creditors [had] been harmed."

### IV.    Findings of Fact

#### A.   UST's Amended Motion

After carefully considering the testimony and the documents in evidence, the Court

makes the following findings of fact.

1.  Mr. McKenna is an experienced attorney who practiced law in Rhode Island for some
    45 years until the Rhode Island Supreme Court suspended his license to practice nearly
    three years ago.

2.    He has considerable general experience in the bankruptcy arena, having represented over 200 parties in bankruptcy cases within this district.

3.    He has particular experience in chapter 11 cases and is familiar with the duties and obligations the Code imposes on chapter 11 debtors and debtors in possession. According to the Court's records, he has served as debtors' bankruptcy counsel and co-bankruptcy counsel in approximately 27 cases since 1986, including in his own chapter 11 individual case in 2010 and in that of his law firm.[2]

4.    On bankruptcy Schedule B, Mr. McKenna identified his interest in "Redemption Companies," that include 17 separate limited liability companies. On Schedule C, he claimed exemptions for funds in bank accounts at Citizens Bank and Bank of America.

5.    As is customary practice, Mr. David Quinn of the UST's office emailed a letter to Mr. McKenna on August 1, 2017, notifying him of the UST's "initial debtor interview" ("Interview") on August 7, 2017, which Mr. McKenna was required to attend to "discuss the reporting requirement as well as other responsibilities that [he would] have during [his] Chapter 11 proceeding." (Trial Exs. C-D). It also explained that Mr. McKenna needed to complete the "Information for Initial Debtor Conference," and bring it with him to the Interview along with proof of insurance. (Trial Exs. C-D). The email also provided a link to the UST website where Mr. McKenna could access the Operating Guidelines and Reporting Requirements and Monthly Operating Report Forms for chapter 11 debtors. (Trial Exs. C-E).

6.    Mr. McKenna failed to attend the Interview. Thereafter, at his requests, the UST rescheduled it twice. Although the UST finally conducted the Interview on August 15, 2017, Mr. McKenna did not bring any of the requested information. At the conclusion of the Interview, the UST gave Mr. McKenna a printed copy of the Operating Guidelines and asked that he acknowledge their receipt and his understanding of them by signing the form entitled "RECEIPT AND CERTIFICATION OF UNDERSTANDING OF OPERATING GUIDELINES AND REPORTING REQUIREMENTS OF THE UNITED STATES TRUSTEE FOR CHAPTER 11 CASES AND DESIGNATION OF SPECIFIC INDIVIDUALS" ("Guidelines Receipt"). (Trial. Ex. F).

7.    The UST held the Initial Meeting on August 28, 2017. (Trial Ex. A, p.15). Although Mr. McKenna appeared and testified, he did not bring any of the specifically requested documents and was unable to provide the names of the scheduled Redemption Companies or substantive details regarding their finances. He also failed to provide copies of his bank statements.

---

[2] The docket numbers of these cases are BK Nos: 86-00824; 88-00387; 89-11041; 90-10204; 91-10898; 91-11759; 91-12834; 91-13019; 93-10320; 94-10366; 97-10861; 98-12736; 01-13196; 08-11979; 08-11979; 08-12568; 08-12723; 08-14126; 09-14224; 10-10256; 10-10274; 10-10527; 10-10527; 10-10836; 10-11575; 10-12997; and 14-11225.

8.   Based on his testimony at the Initial Meeting, the UST was unable to obtain adequate information about Mr. McKenna's financial affairs or the Redemption Companies. Accordingly, the UST continued the Initial Meeting on the record to 10:00 a.m. on September 11, 2017, for Mr. McKenna to produce various documents and provide further testimony. The UST specifically requested that Mr. McKenna provide the following documents prior to the Continued Meeting: (i) copies of all partnership agreements for the Redemption Companies; (ii) copies of bank statements for all bank accounts he maintained from the year prior to the petition filing to the present date; (iii) copies of his most recently filed federal and state tax returns; and (iv) an amended Schedule B listing all of the business entities in which he had an interest as of the petition date. *See* Doc #114, ¶ 10 (setting forth Amended Motion's uncontested allegations).

9.   In addition to the oral notice given at the Initial Meeting, notice of the Continued Meeting's date and time was also entered on the case's docket on August 28, 2017.

10.  The only documents Mr. McKenna provided to the UST with before the Continued Meeting were his federal and state tax returns.

11.  Mr. McKenna did not appear at the Continued Meeting despite having ample notice. The next day, the UST emailed Mr. McKenna advising him of his failure to appear at the meeting, reminding him that he had not provided most of the previously requested documents, and once again requesting that he produce these documents and the signed Guidelines Receipt. (Trial Ex. G).

12.  On September 15, 2017, three days after the UST filed the First Motion, Mr. McKenna appeared at the UST's office without an appointment or advance notice. At that time, Mr. McKenna provided the UST with (i) copies of bank statements for the scheduled account at Citizens Bank, which is actually in the name of non-debtor McKenna Support Services, LLC ("Support Services") (Trial Ex. H), (ii) a hand-written list of the names of the Redemption Companies (Trial Ex. J), and (iii) unsigned copies of what he testified were all of the partnership agreements for the Redemption Companies. (Trial Ex. I).

13.  Mr. McKenna testified that he did not have signed copies of the Redemption Company partnership agreements. (Trial Ex. I). The Court accepts this testimony as credible.

14.  Although Mr. McKenna is the sole member of Support Services and operated its business well before the filing of his petition, he did not list his interest on his original schedules or his amended schedules filed on October 19, 2017 (Doc. ## 1, 116).

15.  Throughout the pendency of his chapter 11 case Mr. McKenna has used the Support Services bank account, into which his monthly social security benefits are deposited, as both a business account for that non-debtor entity and as his personal account from which he pays personal expenses. (Trial Ex. H, p.2).

16. On October 19, 2017, Mr. McKenna's son delivered to the UST's office a signed copy of the Guidelines Receipt (Trial Ex. L) and a copy of a check dated October 18, 2017, issued from a Citizens Bank account entitled "Keven A. McKenna, DID [sic] Chapter 11 Bankruptcy Case #17-BK-10314" ("DIP Account"). (Trial Ex. K).

17. The signed Guidelines Receipt was actually a copy of the UST's pre-marked Exhibit F that he included in his pretrial statement filed on October 20, 2017, and was subsequently admitted into evidence. (Trial Exs. F, L). For reasons Mr. McKenna did not explain, he backdated his signature to August 5, 2017. (Trial Ex. L).

18. Although Mr. McKenna provided the UST with evidence of an established DIP Account, which Mr. McKenna agrees chapter 11 debtors must open post-petition, he did not submit evidence as to the date that he opened the account. (Trial Ex. K).

19. It was not until October 20, 2017, 53 days after the Initial Meeting, that Mr. McKenna provided the UST with copies of his bank statements for his personal account at Bank of America. (Trial Ex. M).

20. While Mr. McKenna incorrectly asserted that as a small business debtor he is not required to file the UST's form Monthly Operating Reports, he acknowledged that as a chapter 11 debtor in possession he is required to file "monthly cash flow statements of income and expenses" ("Cash Flow Reports"). He has not filed any Cash Flow Reports even though his Chapter 11 case has been pending for nearly four months.

21. All of the information and document requests made of Mr. McKenna by the UST were reasonable and necessary to carry out his responsibilities and duties under 28 U.S.C. § 586(a)(3) and (7). Mr. McKenna's significant delay in complying with those requests hindered the UST's ability to fulfill his statutory duties.

22. Mr. McKenna has not explained his substantial delay in complying with the UST's repeated requests, and his delay is unreasonable and unjustified.

23. Mr. McKenna's proffered excuses for not appearing at the Continued Meeting, which stem from the fact that he forgot the date of the meeting, are equally unreasonable and do not justify his failure to appear. Similarly, his explanation for why he has not filed an August Cash Flow Report or Monthly Operating Report—that "none are due yet"— is inaccurate and unreasonable.

24. The UST has established cause to dismiss Mr. McKenna's case under § 1112(b)(4)(F), (G), and (H).

   B. Show Cause Order

25. Mr. McKenna did not file his Largest Creditors List until October 19, 2017, 43 days after the court-ordered deadline to file this mandatory chapter 11 form. *See* Doc. #116.

He has never complied with the Court's August 22nd Order to file his Income Statement. *See* Doc. #90.

26.  His attempt to minimize his non-compliance with the Court's August 22nd Order by blaming the company that provides him with the software program he uses to prepare and electronically file bankruptcy forms is unavailing. His excuse is unacceptable and unjustified.

27.  Additionally, Mr. McKenna failed to comply with the Court's pretrial order. He did not file a pretrial statement or witness lists. He did not explain his noncompliance. *See* Doc. #109. (Trial Ex. A, p.17).

28.  Mr. McKenna's noncompliance with the Court's orders is an additional basis for dismissal under § 1112(b)(4)(E).

   C.   Absence of Unusual Circumstances and Best Interests of Creditors and Estate

29.  Mr. McKenna urged the Court to deny the UST's Amended Motion because of the two pending adversary proceedings he filed.[3] In both proceedings, he seeks to again challenge, this time before this Court, matters he lost on appeal. Although the pursuit of these adversary proceedings might be in Mr. McKenna's personal interest and the primary reason for converting his case to chapter 11, they do not present unusual circumstances such that dismissal of the case would not be in the best interests of creditors and the estate.

30.  In light of the relatively small size of this case, Mr. McKenna's apparently limited assets and income, and the limited number of creditors, only two of whom are general, unsecured non-governmental entities, neither the appointment of a chapter 11 trustee nor conversion of the case to chapter 7 would be in the best interests of creditors and the estate.

31.  Based on the above-mentioned grounds of cause for dismissal, the absence of unusual circumstances, and reasonable justification for Mr. McKenna's repeated failure to timely and reasonably cooperate with the UST's review of his financial affairs, or to comply with the Court's orders, it is in the best interests of creditors and the estate to dismiss this case.

## V.   Statutory Basis for Dismissal Under § 1112(b)

Section 1112(b)(1) mandates dismissal or conversion upon the finding of cause, unless the Court: (i) finds that the exception in § 1112(b)(2) applies, or (ii) determines that the appointment of a trustee under § 1104(a) is in the best interest of creditors and the estate. *See*

---

[3] *See McKenna v. Blanchard*, AP No. 17-01016; *McKenna v. Suttell*, AP No. 17-01031.

*Andover Covered Bridge, LLC v. UST* (*In re Andover Covered Bridge, LLC*), 553 B.R. 162, 171

(B.A.P. 1st Cir. 2016); *Keven A. McKenna, P.C. v. Official Comm. of Unsecured Creditors* (*In re*

*McKenna, P.C.*), No. CA 10-472 ML, 2011 WL 2214763, at *2 (D.R.I. May 31, 2011) (stating

"once cause is established, the [Court] has broad discretion to determine whether conversion or

dismissal is in the best interest of creditors and the estate") (citations omitted).

Section 1112(b)(1) states, in relevant part:

> [o]n request of a party in interest, and after notice and a hearing,
> the court shall convert a case under this chapter to a case under
> chapter 7 or dismiss a case under this chapter, whichever is in the
> best interests of creditors and the estate, for cause unless the court
> determines that the appointment under section 1104(a) of a trustee
> . . . is in the best interests of creditors and the estate.

The BAPCPA amendments to § 1112(b) require dismissal or conversion "if the movant

establishes cause, unless [1] the debtor presents unusual circumstances, [2] the debtor meets

certain criteria justifying the act or omission and likelihood of confirming a plan, or [3] the

[Court] finds that the appointment of a trustee is in the best interest of creditors." *Gilroy v.*

*Ameriquest Mortgage Co.* (*In re Gilroy*), No. BAP NH 07-054, 2008 WL 4531982, at *4 (B.A.P.

1st Cir. Aug. 4, 2008) (citations omitted). Read in conjunction with § 105(a),[4] which imbues a

bankruptcy court with statutory authority "to exercise its equitable powers [when necessary or

appropriate] to facilitate the implementation of [other Code] provisions," the Court may dismiss

a case under § 1112(b)(1) on similar or additional grounds. *In re Trudeau*, BAP No. MW 15-029,

2015 WL 5095905, at *3 (B.A.P. 1st Cir. Aug. 27, 2015) (internal quotations and citations

omitted).

---

[4] Section 105(a) states in relevant part that "[n]o provision of this title providing for the raising of an issue by a party
in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination
necessary or appropriate to enforce or implement court orders or rules . . . ." 11 U.S.C. § 105(a).

Dismissal under § 1112(b)(1) "requires the [Court] to engage in a three-step analysis." *McKenna, P.C.*, 2011 WL 2214763, at *2 (citations omitted). First, the Court must determine if the UST has demonstrated cause for dismissal pursuant to § 1112(b)(4) by a preponderance of the evidence. *Id*. Next, "if cause has been [found] the Court must ascertain whether unusual circumstances exist to prevent conversion or dismissal." *Id*. Finally, "if no such circumstance exists, the Court must convert or dismiss the case," whichever is in the best interest of the creditors and the estate. *Id.* (citing *In re Modanlo*, 413 B.R. 262 (Bankr. D.Md. 2009)).

A.   Finding of Cause

Section 1112(b)(4) sets forth an extensive but non-exhaustive list of conduct that constitutes "cause" for purposes of the dismissal analysis. *See* 11 U.S.C. § 1112(b)(4)(A)-(P); *see also In re Gonic Realty Trust*, 909 F.2d 624, 626 (1st Cir. 1990) (explaining that "the court is not limited to the enumerated grounds when [determining cause]") (internal quotations and citations omitted)). The Court has wide discretion in determining cause, and "may consider other factors as they arise and use its powers to reach appropriate results in individual cases." *McKenna, P.C.*, 2011 WL 2214763, at *1 (quoting *Gonic Realty Trust*, 909 F.2d at 626). Although multiple grounds may exist, "[o]ne ground . . . is sufficient standing alone, to establish cause under the statute." *Id.* (citations omitted); *see also In re Colon Martinez*, 472 B.R. 137, 144 (B.A.P. 1st Cir. 2012).

As the movant, the UST bears the burden of establishing cause for dismissal of Mr. McKenna's case. *See Andover Covered Bridge, LLC*, 553 B.R. at 171 (citing *Efron v. Candelario* (*In re Efron*), 529 B.R. 396, 411 (B.A.P. 1st Cir. 2015)). If the UST presents evidence demonstrating cause by a preponderance of the evidence, "the [C]ourt must find that [cause] has [been] established . . . ." *See In re Builders Group & Dev. Corp.*, No. 13-04867 (ESL), 2014 WL

10

1873412, at *7 (Bankr. D.P.R. May 8, 2014). Once established, the burden shifts to Mr.

McKenna to demonstrate that the exception to dismissal set forth § 1112(b)(2)[5] applies. *See*

*Andover Covered Bridge, LLC*, 553 B.R. at 172 (citing *Efron*, 529 B.R. at 411).

> B.  <u>Section 1112(b)(2)'s Exception to Dismissal</u>

Even if cause is shown, § 1112(b)(2) prevents dismissal or conversion of a case if the

Court "finds and specifically identifies unusual circumstances establishing that converting or

dismissing the case is not in the best interests of creditors and the estate," and the opposing party

establishes that there is a reasonable likelihood that:

> (A) a plan will be confirmed within . . . a reasonable period of
> time; and
> (B) the grounds for converting or dismissing the case include an
> act or omission of the debtor other than under paragraph (4)(A)—
>> (i) for which there exists a reasonable justification for the
> act or omission; and
>> (ii) that will be cured within a reasonable period of time
> fixed by the court.

11 U.S.C. § 1112(b)(2); *see also Andover Covered Bridge, LLC*, 553 B.R. at 172, 176 (citing

*Efron*, 529 B.R. at 411). "The debtor [bears] the burden of establishing that all factual elements

of § 1112(b)(2) exist." *Id.* at 176.

Similar to the finding of cause, "the [C]ourt has broad discretion to determine whether

unusual circumstances exist . . . ." *Id.* at 172 (citing *Efron*, 529 B.R. at 411). *See also Colón*

*Martinez*, 472 B.R. at 144; *Gilroy*, 2008 WL 4531982, at *4. "Although a finding of unusual

circumstances is within the [C]ourt's discretion, the phrase 'contemplates conditions that are not

common in chapter 11 cases.'" *Andover Covered Bridge, LLC*, 553 B.R. at 176 (citations

---

[5] Section 1112(b)(2) is conjunctive and requires the opposing party to show that it meets all of the requirements in § 1112(b)(2)(A)-(B). If the opposing party fails to demonstrate either "unusual circumstances" or any of the requirements in subsections (A) and (B)(i)–(ii), then the exception does not apply. *See Andover Covered Bridge, LLC*, 553 B.R. at 172 (citing *Efron*, 529 B.R. at 411). Therefore, if the Court finds that "unusual circumstances" are not present its analysis may end there.

omitted). "If no such unusual circumstances exist and/or the other requirements are not met, the

[Court] *must* convert or dismiss the case," unless the Court finds that the appointment of a trustee

is in the best interest of creditors and the estate. *Id*. at 172 (citing *Efron*, 529 B.R. at 411).

C.  <u>Best Interest of Creditors and Estate</u>

Once the UST demonstrates cause, or the Court finds cause on other or additional

grounds, and there are no "unusual circumstances," the Court must consider what action is in the

best interest of creditors and the estate. *See McKenna, P.C.*, 2011 WL 2214763, at \*2. Section

1104(a)(3) provides a third alternative to dismissal or conversion, the appointment of a chapter

11 trustee. *Id*. Section 1104(a)(3) provides that:

> [A]ny time after the commencement of the case but before
> confirmation of plan, on request of a party in interest or the United
> States Trustee, and after notice and a hearing, the court shall order
> the appointment of a trustee . . . if grounds exist to convert or
> dismiss the case under section 1112, but the court determines that
> the appointment of a trustee . . . is in the best interest of creditors
> and the estate.

"When read together, §§ 1112(b)(1) and 1104(a)(3) require [the] court to consider . . . whether to

[1] dismiss the case, [2] convert the case to one under Chapter 7, or [3] appoint a Chapter 11

trustee, whichever results in the best interest of creditors." *McKenna, P.C.*, 2011 WL 2214763, at

\*2 (internal quotations and citations omitted). In considering these alternatives, "the [C]ourt

determines which approach is appropriate based on the record." *Id*. While the Code does not

define "best interest of creditors and the estate," courts typically consider several factors in

making the determination, including as may be relevant here:

> [1] whether some creditors received preferential payments, and
> whether equality of distribution would be better served by
> conversion rather than dismissal, . . . [2] the ability of the trustee in
> a chapter 7 case to reach assets for the benefit of creditors, [3] in
> assessing the interest of the estate, whether conversion or dismissal
> of the estate would maximize the estate's value as an economic

> enterprise, [4] whether any remaining issues would be better
> resolved outside the bankruptcy forum, . . . [and] [5] whether a
> plan has been confirmed and whether any property remains in the
> estate to be administered . . . .

*Efron*, 529 B.R. at 413.

## VI.    Analysis and Conclusions of Law

### A.    Cause Established by UST

Based upon the Court's findings of fact detailed above, and after engaging in § 1112(b)'s

three-step analysis, the Court concludes that the UST has demonstrated cause for dismissal on all

three grounds alleged in his Amended Motion. Although one ground is sufficient, Mr.

McKenna's conduct throughout the case and his responses to the UST's questions during the

evidentiary hearing amply support dismissal despite his arguments to the contrary.

### i.    *Failure to attend meeting of creditors*

Under § 1112(b)(4)(G) "cause" includes the "failure to attend the meeting of creditors

convened under [§] 341(a) . . . without good cause shown by the debtor." *See e.g.*, *Mahanna v.

Bynum* (*In re Mahanna*), 465 B.R. 436, 438-39 (W.D. Tex. 2011) (affirming bankruptcy court's

finding of cause for dismissal due to debtor-wife's undisputed failure to attend first creditor

meeting); *In re Oakland Hills Land Dev., LLC*, No. 10-56463, 2010 WL 5553362, at *1 (Bankr.

E.D. Mich. June 23, 2010) (finding that debtor's failure to attend examination was "inexcusable

and outrageous" given several reminders and noting that debtor's objection lacked "any facts that

would establish 'good cause'"). Cause has also been found under subsection (G) where a

debtor's belated appearance, lack of preparation, and inability to provide "little definite,

substantive information" regarding the debtor's financial affairs delayed the completion of the

§ 341 meeting. *In re Vanilla Woodward, LLC*, 501 B.R. 322, 323 (Bankr. E.D. Mich. 2012).

The UST has met his burden and established cause to dismiss under § 1112(b)(4)(G) because Mr. McKenna failed to appear at the Continued Meeting despite having advance notice. Furthermore, the fact that the Continued Meeting was necessitated by Mr. McKenna's repeated failure to produce previously requested documents about his finances and his inadequate preparation for the Initial Meeting is significant. His lack of cooperation resulted in his inability to provide meaningful substantive information about the Redemption Companies and hindered the UST's ability to fully examine Mr. McKenna about his assets, finances, and bank accounts.

Upon the Court's finding of cause under § 1112(b)(4)(G), the burden of proof shifted to Mr. McKenna to demonstrate "good cause" excusing his failure to attend the Continued Meeting. He has not done so. His proffered excuses for not attending the Continued Meeting are unreasonable and simply do not justify his non-appearance. Mr. McKenna's excuses, that he "forgot" about the meeting because he does not keep a calendar, and lost the paper on which he wrote down the date and time of the meeting, fall far short of reasonable justification. This is particularly so in light of the years he has practiced as an attorney and his considerable experience in chapter 11 cases. He also attempted to justify his non-appearance at the Continued Meeting on the basis that as the sole caregiver for his seriously ill wife, he had to take her to an out-of-state medical appointment that he was reminded of on the Friday before the meeting. This appointment was not an emergency and had been already scheduled. He made no effort to contact the UST to confirm the date or time of the meeting, or to review the public case docket that listed the date well in advance of the meeting. His disorganization does not excuse his failure to appear at the Continued Meeting that he knew about since the Initial Meeting on August 28, 2017.

ii. *Failure to timely provide information or attend meetings reasonably requested by UST*

Cause for dismissal arises under § 1112(b)(4)(H) where a debtor fails to "timely provide information or attend meetings reasonably requested by" the UST. *See Andover Covered Bridges, LLC,* 553 B.R. at 172-73 (noting that § 1112(b)(4)(H) does not require the debtor's failure to be unexcused to constitute cause). This provision imposes sanctions for a debtor's failure to reasonably cooperate with the UST, who is charged under 28 U.S.C. § 586(a)(3) with the duty to "supervise the administration of cases" under the Code. *See* 7 *Collier on Bankruptcy* ¶ 1112.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017). A chapter 11 debtor's cooperation is critical to maintain the integrity of the reorganization process. The debtor's financial disclosures, schedules, and monthly operating reports are "more than mere busy work." *Andover Covered Bridges, LLC*, 553 B.R. at 173 (internal quotations and citations omitted). They "are the life-blood of the Chapter 11 process" and "provide necessary information to the Court, creditors, and other parties in interest about the progress and prospects of a debtor's reorganization efforts." *Id.* (internal quotations and citations omitted).

While Mr. McKenna demurs that he has produced all documents requested by the UST, he did so belatedly in piecemeal fashion and only after the UST filed the First Motion. Moreover, he did not provide all of his bank statements until over five weeks after the UST's initial request and just a few days before the evidentiary hearing. Although § 1112(b)(4)(H) does not require such untimely response to be unexcused, the Court notes that Mr. McKenna provided no explanation for his significant delays in complying with these requests. *See Andover Covered Bridges, LLC,* 553 B.R. at 172-73. The untimely production of reasonably requested information and documents, standing alone, is cause to dismiss. It is not simply cured by eventual document production after much prodding and the threat of potential court action following the filing of the

15

First Motion. *See In re Hoyle*, No. 10-01484-TLM, 2013 WL 210254 at *10, 11 (Bankr. D.

Idaho Jan. 17, 2013) (noting the importance of timely financial disclosures and that the debtor's

eventual filing of monthly reports does not eliminate cause for dismissal because it "does not

satisfactorily explain or excuse failure to satisfy [a debtor's] duties as a Chapter 11 debtor")

(internal citations and quotations omitted). Consequently, the UST has met his burden and

established cause for dismissal under § 1112(b)(4)(H).

### iii. Failure to file Monthly Operating Report for August

Finally, the UST seeks dismissal under § 1112(b)(4)(F) for Mr. McKenna's failure to file

the August Monthly Operating Report. Under this subsection, the "unexcused failure to satisfy

timely any filing or reporting requirement established by [the Code] or by any rule applicable to

a case under [chapter 11]" is cause for dismissal. The statutory requirements supporting  the

UST's position are 28 U.S.C. § 586(a)(3), which details various duties of the UST in bankruptcy

cases, and 11 U.S.C. § 704(a)(8), which "mandates the filing [by case trustees] of periodic

operating reports and summaries and such other information as the [UST] or court requires if the

business is authorized to be operated." *In re Luar Cleaners Inc*., No. 14-04974, 2016 Bankr.

LEXIS 2434, at *4 (Bankr. D.P.R. June 29, 2016). Although § 704(a)(8) refers to a "trustee," its

mandate extends to chapter 11 debtors in possession by virtue of §§ 1106(a)(1) and 1107(a).[6] *Id.*

at *3-4.

To fulfill his supervisory role in chapter 11 cases and ensure that chapter 11 debtors meet

their statutory duties, the UST adopted the Operating Guidelines. These guidelines require,

among other things, that chapter 11 debtors file Monthly Operating Reports 14 days after the

close of the prior monthly reporting period. (Trial Ex. E, P.15). The UST also has made available

---

[6] Section 1106(a)(1) renders the duty of a case trustee set forth in § 704(a)(8) applicable to a chapter 11 trustee, and
in turn, § 1107(a) imposes that same duty on a debtor in possession.

16

on its website form monthly operating reports ("Form Reports"), including a specific form for

use by individual chapter 11 debtors and small business chapter 11 debtors. (Trial Ex. E, p.15).

Mr. McKenna contends that as a small business debtor he is not required to file the

UST's Form Reports. Without citing to any statutory provision or federal bankruptcy rule, he

maintains that he is only required to file the Cash Flow Reports. He is completely mistaken.

First, Mr. McKenna did not file his amended petition designating his case a small business case

(as defined by § 101(51D)) until after the August and September Reports became due. *See* Doc.

#116. Second, a chapter 11 small business debtor is not exempt from the filing requirements of

§ 704(a)(8). Third, there are more stringent and detailed reporting requirements for chapter 11

small business debtors. *See* 11 U.S.C. § 308(a) (requiring periodic reports that contain

information about the debtor's profitability, projections of cash receipts and disbursements,

comparisons of actual cash receipts and disbursements with prior projections, and a

representation as to whether the debtor has complied with all post-petition requirements under

the Code and Rules and timely filed tax returns and other required governmental filings).

Mr. McKenna is equally mistaken in asserting that his Cash Flow Reports are not due.

The Operating Guidelines require the filing of Monthly Operating Reports within 14 days of the

close of each monthly reporting period. (Trial Ex. E, p.15). As for the small business debtor,

Rule 2015(a)(6) sets the deadline for the filing of the § 308 reports within 21 days of the end of

each such reporting period. *See* Fed. R. Bankr. P. 2015(a)(6). Mr. McKenna's Monthly

Operating Report for August of 2017 is overdue and has not been filed, and as of October 26,

2017, the date of the evidentiary hearing, the Monthly Operating Report for September of 2017

also was overdue and had not been filed.

The importance of timely filing monthly reports cannot be overstated. They are vital to "determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization," and are crucial to the efficient and transparent administration of the case. *Andover Covered Bridges, LLC*, 553 B.R. at 173 (citations omitted). Mr. McKenna's failure to file *any* financial reports regarding his business operations several months into his chapter 11 case is cause for dismissal under § 1112(b)(4)(F). "[T]o reap the benefit of chapter 1l, [Mr. McKenna] must pay the price of disclosure; he . . . needs to provide financial and other relevant information to the [UST and] the creditors to inform them and the Court about the progress and status of the case." *Luar Cleaners Inc*., 2016 Bankr. LEXIS 2434, at *5 (internal quotations and citations omitted).

B.  Show Cause Order

Section 105(a)[7] extends to the Court the statutory authority "to exercise its equitable powers [where necessary or appropriate] to facilitate the implementation of other [Code] provisions." *Trudeau*, 2015 WL 5095905, at *3. Encompassed within that power is the authority of the Court to *sua sponte* dismiss a case (after notice and hearing) under § 1112(b)(1) if the Court finds cause for dismissal on grounds other than or in addition to those raised by the UST. *McKenna, P.C*., 2011 WL 2214763, at *3.

i.  *Failure to comply with Court Order*

Section 1112(b)(4)(E) expressly states that a debtor's "failure to comply with an order of the court" is cause for dismissal of the bankruptcy case. Notably, the failure need not "be willful, . . . [in] bad faith, or fraud[ulent]." *Luar Cleaners Inc*., 2016 Bankr. LEXIS 2434, at *7 (internal

---

[7] Section 105(a) states in relevant part that "[n]o provision of [the Code] providing for the *raising of an issue by a party* in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules . . . ." 11 U.S.C. § 105(a) (emphasis added).

quotations and citations omitted). "This section gives effect to the notion that compliance with

court orders is a fundamental obligation of any party . . . and that the protections . . . a debtor

gains under the [Code] travel in tandem with the many obligations [it imposes on the debtor.]"

*Id*. at *6-7 (internal quotations and citations omitted). "[I]t is well established that courts have

inherent authority to manage their dockets and sanction parties who fail to comply with court

orders and deadlines." *Colon Martinez*, 472 B.R. at 145 (internal quotations and citations

omitted).

There is cause to dismiss under § 1112(b)(4)(E) because Mr. McKenna failed to comply

with the August 22nd Order. As noted above, he also failed to comply with the Court's pretrial

order. He had more than sufficient notice of these orders and, as an experienced attorney, knew

or should have known of the consequences of noncompliance. Even after the issuance of the

Show Cause Order on October 4, 2017, Mr. McKenna did not file the Largest Creditors List until

October 19, 2017, 43 days after the September 6, 2017 deadline. This list is a key chapter 11

document ordinarily filed with the petition, and if not, it is generally required to be filed within

seven days of the petition filing. *See* Rule 1007(d); R.I. LBR 1007-1(d). There is an important

reason for these tight time frames. The UST reaches out to a debtor's 20 largest unsecured

creditors early on in the reorganization proceeding to form an official committee of unsecured

creditors. In the absence of the formation of such committee, it is this group of creditors upon

whom notices of various substantive filings must be served throughout the case. *See*

§  1102(a)(1); *see also* Rule 4001(b)(1)(C) and (c)(1)(C). As for the Income Statement, Mr.

McKenna has never complied with the August 22nd Order.

In an effort to excuse his noncompliance, he attempts to shift the blame onto the company

from whom he purchases the software he uses to prepare and electronically file bankruptcy

forms. It is telling that just a cursory review of the case docket reveals that Mr. McKenna had no

difficulty filing motions, adversary proceedings, and other documents that served his purposes

and agenda. And conspicuously absent from his testimony was any follow-up confirming that the

Income Statement or Largest Creditors List, which he "thought [he] had filed," had in fact been

filed. As a debtor and debtor in possession, it is Mr. McKenna's responsibility and obligation to

verify his compliance with the Code's reporting deadlines and those set by the Court. *See*

*Andover Covered Bridge, LLC*, 553 B.R. at 173 (rejecting debtor's excuse that untimely filings

were a result of "counsel's email system and the UST's failure to notify the Debtor [of his

noncompliance]"). Mr. McKenna's effort to deflect the blame is unavailing.

    C.  <u>Absence of Unusual Circumstances and Best Interest of Creditors and Estate</u>

For § 1112(b)(2)'s exception to dismissal to apply, Mr. McKenna must establish "that all

factual elements of §1112(b)(2) exist." *Id.* at 176. One such element is the presence of "unusual

circumstances establishing that converting or dismissing the case is not in the best interest of

creditors and the estate." *Id.* He has not presented any evidence of unusual circumstances, nor

does the record reflect such circumstances. *Id.* at 176-77. While Mr. McKenna stressed his

eventual compliance with the UST document requests, blamed computer software for his

noncompliance with the August 22nd Order, and emphasized his two pending adversary

proceedings, these are not "unusual circumstances" that excuse the multiple established grounds

of cause for dismissal. Nor has he met his burden to show "reasonable justification" for his

conduct and omissions giving rise to such cause. *See* 11 U.S.C. § 1112(b)(2)(A) and (B)(i)-(ii).

Further comment about the pending adversary proceedings is warranted to put them in

perspective. Neither matter involves issues unique to bankruptcy law. Also, the issues raised in

both proceedings have already been addressed on appeal either by the Rhode Island Supreme

Court or the United States Court of Appeals for the First Circut. In one, he seeks to re-litigate the

enforceability of the judgment obtained by his largest unsecured, non-governmental creditor after

being unsuccessful in his appeal to the Rhode Island Supreme Court. *See Wells v. Blanchard*,

140 A.3d 151 (R.I. 2016). In the other, in which he names all of the sitting Justices of the Rhode

Island Supreme Court and the Rhode Island Attorney General as defendants, he once again

challenges the suspension of his license to practice law in Rhode Island and the denial of its

reinstatement on grounds similar to those he unsuccessfully pursued before the Court of Appeals.

*See McKenna v. Curtin*, 869 F.3d 44 (1st Cir. 2017).[8]

Neither the UST nor Mr. McKenna argued for the alternative remedies under

§ 1112(b): the appointment of a chapter 11 trustee or conversion of the case to one under chapter

7. At any rate, neither alternative is a viable option in light of the small number of creditors and

apparently limited assets and income of Mr. McKenna. Based on his schedules and the proofs of

claim filed in this case, there are only four creditors, only two of which are general unsecured

creditors.[9] As listed on his Schedule I, and according to his testimony, his current monthly

income is less than $4,000 and the value of his scheduled assets appear, at best, uncertain and

limited. *See* Doc. #1. Appointing a chapter 11 trustee or converting the case to one under chapter

7 is unlikely to enhance the estate and will necessarily result in greater administrative expenses.

*See Efron*, 529 B.R. at 413.

---

[8] The defendants in this adversary proceeding filed a Motion to Withdraw the Reference (AP. Doc. #5) to the United States District Court for the District of Rhode Island, which has been transmitted to that Court for consideration (AP. Doc. #11). *McKenna v. Suttell*, AP No. 17-01031.

[9] The only active unsecured creditor in the case is Ronald Blanchard, who has a judgment against Mr. McKenna in excess of $12,000 based on a state court award of sanctions under Rule 11 of the Rhode Island Superior Court Rules of Civil Procedure. *See* Memorandum of Decision, Doc. #43. Mr. Blanchard previously sought dismissal of this case. The other non-governmental creditor is Verizon, by American InfoSource LP as agent, which filed a proof of claim for approximately $181. The remaining creditors are taxing authorities: the Internal Revenue Service, which filed a proof of claim in excess of $134,000 (consisting of approximately $3,900 as secured, $8,000 as unsecured priority, and the balance as unsecured), and an unsecured priority claim of the Rhode Island Division of Taxation for approximately $394. *See* Case Claims Register.

## VII.    Conclusion

To be clear, the Court's decision to dismiss this case is based on unexcused grounds for cause under § 1112(b)(4)(E), (F), (G), and (H), and takes into consideration "the totality of the circumstances [present in this] case." *See McKenna, P.C.*, 2011 WL 2214763, at *1(internal citations and quotations omitted); *In re Vanilla Woodward, LLC*, 501 B.R. at 332.

In light of the multiple grounds for dismissal, Mr. McKenna's closing argument at the hearing is troubling. It only bolsters the Court's determination that the case must be dismissed. He accused the UST of "making a mountain out of a molehill." What is more, he tried to diminish his failure to fulfill his obligations under the Bankruptcy Code by brushing it off as "no harm, no foul . . . I didn't do any harm" by not appearing at the Continued Meeting because it would not have made "a difference" due to his limited assets and income. These statements, taken at their best, reflect Mr. McKenna's deep lack of appreciation for his duties and responsibilities as a debtor and debtor in possession. Taken at their worst, they demonstrate a cavalier attitude towards those duties and responsibilities.

A separate order of dismissal in accord with this Decision will be entered.

Date: December 1, 2017                                   By the Court,


                                                        Diane Finkle
                                                        Diane Finkle
                                                        United States Bankruptcy Judge

22